COMSTOCK, FERRE & COMPANY v. MARGARET M. DEVLIN and Another.[1]

July 27, 1906.

Nos. 14,737—(154).

**Refund on Void Tax Certificate.**

Under section 97, c. 1, p. 59, Laws 1878, the holder of a tax certificate which had been adjudged void was entitled to a refundment out of the county treasury of the amount paid at the sale, with interest, a lien on

[1] Reported in 108 N. W. 888.

the land for all taxes, penalties, or interest paid by him subsequent to the purchase, and the right to enforce the lien by action. The right to a lien was given for payments of taxes not delinquent, as well as for such as were delinquent when paid.

**Statute at Time of Sale.**

A statute in force when a tax sale is made enters into and forms a part of the contract between the state and the purchaser, and the rights of the purchaser under the statute are not affected by the subsequent repeal of the statute.

**Limitation of Action.**

The statute of limitations did not begin to run against the action to enforce the liens provided for by section 97, c. 1, p. 59, Laws 1878, until the tax sale was adjudged invalid.

**Purchase of Land Subject to Tax Lien.**

One who purchases land upon which there is a tax title takes it subject to all the rights of the holder of such title, and this includes the statutory right to a lien for subsequent taxes paid if the sale is adjudged invalid.

Action in the district court for Hennepin county to determine the adverse claims of defendants to certain land. The case was tried before Dickinson, J., who found that defendant Margaret M. Devlin was the owner of the land, subject to the lien of plaintiff for taxes paid and interest, amounting to $1,194.63. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*Tryon & Booth,* for appellants.

*P. W. Guilford* and *H. P. Roberts,* for respondent.


ELLIOTT, J.

This is an action to determine adverse claims to lot 9, block 20, St. Anthony Falls City, Hennepin county. On January 1, 1849, Cheever, the holder of the patent title, deeded the land to Mansfield and Timson. During the same year Mansfield conveyed his interest to Timson, and on May 5, 1851, Timson conveyed to Hubbard, who died in 1877. On October 28, 1904, Hubbard's heirs conveyed the lot to Margaret M. Devlin, the defendant and appellant in this action. On September 4, 1880, the lot was sold under the 1877 judgment for the taxes of 1877, 1878, and 1879, for $13.30, to Albert Johnson. On January 10, 1882, Johnson sold and transferred the state assignment certificate to Comstock, Ferre & Co., the plaintiff and respondent herein. Johnson paid the subsequent taxes for the years from 1881 to 1902, except

for 1895 and 1896. The taxes for all these years, except 1881, 1882, and 1883, were paid before they became delinquent. The trial court found that the defendant was the owner of the lot, that the judgment under which the plaintiff acquired the tax title was void, and that the plaintiff was entitled to a lien on the lot for the subsequent taxes paid thereon with interest and for the foreclosure of the lien. The notice of expiration of time to redeem was issued November 2, 1904, and called for the payment of $13.30 only. It did not include the amount paid for subsequent taxes. No redemption was made. The appeal is from an order denying the defendant's motion for a new trial.

No claim for the refundment of the amount paid at the tax sale is made, and the only question is as to the right of the plaintiff to a lien on the lot for the amount paid for subsequent taxes before they became delinquent.

1. The right of the respondent to a lien for subsequent taxes paid by him is secured by section 97, c. 1, p. 59, Laws 1878. The statute provides:

> When a sale of lands as provided in this act is declared void by judgment of court, the judgment declaring it void shall state for what reason such sale is declared void. In all cases where any sale has been or hereinafter shall be so declared void, the money paid by the purchaser at the sale or by the assignee of the state upon taking the assignment shall, with interest at the rate of twelve per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor, and so much of said money as has been paid into the state treasury shall be charged to the state by the county auditor, and deducted from the next money due the state on account of taxes. Provided, that if such purchaser or assignee, or party holding his right shall, after such purchase, or assignment from the state, have paid taxes, penalties, or interest upon such piece or parcel of land, he shall have a lien on such piece or parcel for the amount of such taxes, penalties, and interest so paid, with interest thereon from the time of payment thereof, at the rate in this section provided, and may enforce such

lien by action, or if he be in possession of such piece or parcel, shall not be ejected therefrom until such amount and interest shall be paid.

It will be observed that this section gave to the holder of a tax title which has been adjudged void the right to (1) a refundment of the amount paid at the sale, with interest, and (2) a lien on the land for all taxes, penalties, or interest which he shall have paid subsequent to the purchase, and (3) the right to enforce the lien by action. The language is plain and unambiguous. But the appellant contends that (a) section 97 of the statute was repealed by section 19, c. 10, p. 30, Laws 1881, and that the respondent acquired no rights under it; (b) that if the statute is in force a lien can be acquired thereunder for taxes only which are delinquent when paid; and (c) that if the respondent ever acquired liens for these payments, the cause of action to enforce each lien accrued at the time the payment was made, and the statute of limitations ran against each right of action six years from the date of such payment.

2. The appellant's contention that the word "delinquent" must be read into the statute does violence to the natural meaning of the language and is not required by the decision in Sprague v. Roverud, 34 Minn. 475, 26 N. W. 603. The argument rests largely upon the history of the sections of the act which provide that subsequent taxes paid by the holder of a valid tax title must be included in the amount required to redeem. It appears that section 128, c. 1, p. 62, Laws 1874, originally provided that if the tax purchaser should pay the taxes for the subsequent years, the amount of such payments should be added to, and be, a part of the money necessary to redeem from the sale. This act was amended by section 88, c. 1, p. 55, Laws 1878, by inserting the words, "after they shall have become delinquent." Section 130, c. 1, p. 63, Laws 1874, providing for the amount necessary to redeem, provided for payment by the redemptioner of all subsequent payments of taxes whether delinquent or not when paid, and this was amended by section 90, c. 1, p. 56, Laws 1878, by inserting the word "delinquent" before the word "taxes." Section 139, c. 1, p. 68, Laws 1874, provided that taxes accruing subsequent to the sale and paid by the purchaser, should bear interest. The section was amended by sec-

tion 98, c. 1, p. 59, Laws .1878, but the word "delinquent" was not inserted in this section so as to make it correspond with the other two sections. In an action against the county auditor by the holder of a tax title from which redemption had been made without the payment of subsequent taxes which were not delinquent when paid, it was held that the sections must be construed together so as to give effect to the manifest intention of the legislature that the party redeeming should only be required to pay such subsequent taxes as were delinquent when paid by the holder of the tax title. Sprague v. Roverud, 34 Minn. 475, 26 N. W. 603. But the court was considering the various sections which related to the same subject-matter, while the section now under consideration covers completely the entire subject-matter to which it relates. Sections 88, 90, and 98 relate to redemption from a valid sale, while section 97 relates to and determines the rights of the holder of a tax title which has been declared void. As the sections considered in Sprague v. Roverud related to one subject, it was proper to infer that the legislature intended them to be consistent and form a complete system.

The remedy provided by section 97 is complete. It is not necessary that the sections relating to reimbursements should harmonize with those which relate to redemption and, as a matter of fact, the legislation with reference to the two subjects has differed in many material respects. In the statutes and the various amendments relating to refundment, the word "delinquent" has been systematically omitted, but the provisions relating to redemption show clearly that the intention has been to require the repayment of only such taxes as were delinquent when paid. The holder of a tax title may assume that it is valid and pay the future taxes on the land without reference to statutes providing for a lien. There is no reason why he should wait for the tax to become delinquent. In this instance the notice of redemption was not served until 1902; but if it had been served in 1881, and there had been no redemption, it could not reasonably be said that the holder should have allowed all the subsequent taxes to have become delinquent, or lose his right to a lien in the possible event of the title being adjudged void. This would be to require him to act always on the theory that the title was invalid, or, at least, suspicious, when the law presumes it is valid.

3. A tax sale creates a contract between the purchaser and the state. The statute in force at the time of the sale enters into and forms a part of the term of this contract and it cannot be repealed to the prejudice of the holder of the tax certificate or deed. Presumably the state intends to make a valid sale, but as an additional guaranty and security against the loss of his money the statute provides for the return of the amount paid in the event of the sale being found invalid. As far as the purchaser is concerned, the principle is the same whether he is secured by a provision for refundment or by a lien on the land. Both are a part of his security against loss. After a person has acquired a tax title it is necessary that he should protect that title by paying the future taxes. If he fails to do so, the state will convey a better title to some one else. The right to protect his title by paying taxes as they accrue without the risk of losing the money thus invested is a valuable right which enters into the contract with the state, and the purchaser cannot be deprived of it so long as the state continues to levy taxes and enforce their payment against the land. The right is not affected by the repeal of the statute. Hillebert v. Porter, 28 Minn. 496, 11 N. W. 84; Fleming v. Roverud, 30 Minn. 273, 15 N. W. 119; State v. Foley, 30 Minn. 350, 15 N. W. 375; Jaggard (Minn.) Tax. 546. Therefore the repeal of section 97, c. 1, p. 59, Laws 1878, by section 19, c. 10, p. 30, Laws 1881, did not affect the right of this respondent to a lien for subsequent taxes paid by her.

4. The right to refundment and the right to a lien and its enforcement under section 97 are dependent upon the same fact. Neither exists until the tax title is adjudged invalid by a competent court. The lien for future payments attached at that time. The right to a lien exists from the time of the sale and becomes effective upon the occurrence of the condition, but no cause of action arises until the tax sale is adjudged invalid. The holder of the tax title is not required to take any action for the purpose of having his title adjudged valid as it is presumed to be valid until the contrary is shown. What was said to the contrary in State v. Norton, 59 Minn. 425, 61 N. W. 458, was disapproved of in State v. Murphy, 81 Minn. 255, 83 N. W. 991, where the court said, "Surrounded with statutory declarations and presumptions of validity no sound reason occurs to us why the courts should step in and say that the holder of such a title must take it with a sus-

picion of invalidity, and proceed without delay and obtain a judicial determination of the soundness of such suspicion." The statute of limitations does not begin to run until a right of action accrues, and as the right to commence an action to enforce the lien secured by section 97 did not accrue until the title was adjudged invalid, the statute began to run at that time.

5. The notice of expiration of time to redeem which was issued before the appellant acquired her deed to the lot made no reference to the amounts which had been paid for subsequent taxes. The appellant contends that she had no knowledge that the respondent made any such claim, and as the premises were vacant she had the right to rely on the assumption that the taxes had been paid by the party who held the legal title during the years between the tax sale and the expiration of the time to redeem. But she had notice of the tax sale and of the assignment of the certificate and of all the record proceedings. This record was notice to her of the legal rights of the purchaser of the tax sale. If the tax sale was valid she knew that she acquired nothing by the deed from the Hubbards, and that if it was ever declared void the land would be subject to liens for the amounts which had been paid for the subsequent taxes. The statute itself was notice that the holder of the tax certificate had the right to pay the subsequent taxes.

The order appealed from is affirmed.